This case on today's docket is the case of Amanda Mosley v. Megan Hackney. We have Mr. Dennis Atterbury for the appellant and Joseph Vito for the appellate. So you may begin Mr. Atterbury when you're prepared to do so. If it pleases the court, counsel, I'm Dennis Atterbury, the attorney for Ms. Mosley and the plaintiff. We're here today on two issues. The first issue is whether the trial court erred in finding that as a matter of law the court could not look to parole evidence to determine the contract terms and enforcement itself. Issue two is whether the defendant's actions in opposing the enforcement of the agreement amounts to frivolous conduct meant to harass the plaintiff, justify an attorney's fees and costs. On issue one, we believe the trial court erred in not looking at parole evidence because first, the release was ambiguous. He had the right to look at parole evidence. Defendant's July 27th letter made an offer to the plaintiff. It was three parts. It was clear, forward and certain. One, my client received $3,500. Two, they were going to waive the med pay lien. And three, they were going to provide for $1,463.66 towards my client's attorney's fees under the common fund document. After careful consideration, my client agreed. It was the defendant who then drafted the release upon the settlement. It mentioned three parts. The $3,500. It mentioned the waiver of the lien. But instead of the attorney fees for my client, partial payment of that, $1,463.66, it said other good and valuable consideration. What is good and valuable consideration? My client believed that it was that $1,463.66 that was going to be paid towards the attorney's fees. The defense argues this was just legalese. They put it in every contract. It means nothing. Well, the defendant knew the terms of the July 27th letter. It was their terms. They knew that those terms on the day that they drafted the release. The document was drafted by them and should be construed against them and in favor of the plaintiff. If it is unclear whether or not the good and valuable consideration meant that third term of additional $1,463.63 towards the attorney's fees or it was just frivolous language that was just legalese, just put in the document. If it's unclear, then this document is ambiguous, and we look to the Prohibitous Rule, which is the offer which was accepted, the July 27th letter. Now, if the court found that the release was silent on the issue of this $1,463.66, then the court should have looked towards Northern Trust Company v. Brentwood North Nursing and Rehabilitation Center. It's a second district case, 1992. That court did note that ordinarily you don't look at parole evidence if the contract terms are clear and unambiguous. However, they said that parole evidence is admissible to determine and show a conditional precedent to the existence of—to the contract. They further said that all relevant evidence may be considered to determine whether a particular writing, in that case a release, is the complete agreement of the parties. The facts in that Northern case was a release. The court ordered a gag order because there was nothing in the release saying not to or that there should have been. Plaintiff wanted to produce parole evidence saying, wait a second, we had agreed that we were going to take the gag rule out of the release because as part of the terms of settlement, we don't want that in there. Defense argued, wait a second, you can't look at the parole evidence because this release is clear and unambiguous. The court said, well, we understand that our role is not to amend a contract, it's not to amend an agreement or modify it. It is to ensure that the release contains the full agreement, and that's what we are ruling here. And that's what we have in this case. The defendant made an offer with three provisions. Plaintiff accepted the offer. Throughout the whole briefs, at no time has the defendant argued that we did not offer those three items. They've never argued that. They've never argued that the plaintiff did not accept those terms. So therefore, the agreement should be enforced. Well, the defendant has come up with the argument that the third part of that agreement is not enforceable because it is paying towards attorney fees. In this case, this amount is coming from the MedPay, and that's under the Common Fund Doctrine, and the Common Fund Doctrine does not apply when the medical payment carrier and the liability carrier is the same because there's no benefit to the company. Well, it is true in this case the MedPay carrier and the liability carrier was the same company. However, there are two different policies, two different obligations, two different financiary duties, including subrogation obligations. The common fund is derived from the subrogation portion, not from the liability portion. The liability carrier has a duty to pay damages. The plaintiff had a duty to subrogate, and the common fund is derived from that subrogation duty. It's not from liability. Normally, when MedPay carriers have a lien on a file, the liability carrier cuts a separate check directly to the MedPay carrier, and that's where the pot is created. I guess in this case, the American family would have wrote a check to itself and gone through that process, or they could have just done it on the books. The plaintiff, based upon the letter, the July 27th letter, assumed that it was just going through the books. There's been nothing presented in the evidence that that was not going to be the case or anything. In the end, it comes back to it was their offer. It was accepted. Now they're trying to avoid that agreement that they offered. There should be no distinction in the common fund doctrine because the MedPay carrier and the liability carrier are the same one because there's two different policies, two different obligations, two different financiary duties, including subrogation. And under the common fund doctrine, the obligations are related to the subrogation, the plaintiff and his relationship with the insurance company, not the defendant and their relationship with the insurance company. Now, the final argument is that the money, the attorney's fees, was going to be paid directly to the plaintiff's attorney and not to the plaintiff. Therefore, there's no benefit to the plaintiff. That's not true. The third part of it was to help pay the attorney's fees for the plaintiff because the attorney charged one-third of the global settlement, and this was allowing us to get this case resolved. If the court agrees with the defendant, he would put less money in my client's pocket by making me take the one-third of the global settlement out of her hand amount. That argument is just a red herring, and so it needs to be – it's not an accurate argument that we make. In the end, the settlement should have been a simple one. The term was straightforward and clear in their July 27th letter. My client was to receive $3,500. The MedPay was to be waived, and one-third of the MedPay lien of $1,463.60 should have been paid on behalf of the plaintiff towards her client's fees. So why wasn't it in the release of all claims that the $1,463 of the MedPay lien be provided? Because it's not in the release, right? The $1,463? No, but the other good type of consideration, I believe that is that $1,463.66. I believe that is what that's referring to. And if that would have been in there, then we wouldn't be here. Correct. And that goes to my whole argument is that it was their agreement. They drafted the agreement. It was three parts. You got to review it, right? Correct. But the other good type of consideration, that can't just be superfluous language. It can't just be legalese. It has to stand for something. And what that other good type of consideration is that $1,400. Maybe they didn't know how to write that. I don't know. So what the normative court says is that let's look to the actual agreement to make sure that the release has that information in it. And that's what we're doing. Look to the actual settlement agreement. It's their terms. They're the ones that created the terms. We just accepted the terms. And what I don't understand is if they did not want to accept the terms of those three terms and when they provide the release, why didn't they notify that we're not going to agree to that? Why didn't they wait until that release was done? Send an email saying, okay, it's a go. I'm on it. I'm writing the checks. Wait till the case is dismissed. Wait 25 days and then say, oh, by the way, now we're not going to honor that third provision. If they would have said, wait a second, we're not going to honor that third provision. Here's a new release. This is modifying the agreement. Then I can see where they would have to stand. But they were modifying an agreement without saying that they're going to modify the agreement. I mean they're putting language in there that would lead to a false sense of security that they are protecting the interest because they put other good and valuable consideration. Other good and valuable consideration. And that's where we get into the issue – the second issue. They replaced that third term with other good and valuable consideration, and then they waited. They chose to wait until after the release was signed, until after the case was dismissed, and waited 25 days in the past before they notified that we're not going to honor the agreement. And then when the plaintiffs file a motion to enforce the settlement, in their argument they repeat the pattern. They now take out the words with good and valuable consideration in their argument, well, in their brief, and replace it with dot, dot, dot. Why are they replacing the words with other good and valuable consideration with dot, dot, dot? If it's in their argument, those words didn't mean anything. They were just superfluous, unless it's to deceive the court. I don't understand why you put dot, dot, dot and not actually quote the actual release unless those words mean something. And those words – and the dot, dot, dot was not meant to – was meant to deceive the court. They – why did they leave the initial terms, that third term, out of the initial release? Why did they wait to notify the plaintiff until after the release was signed, until after the case was dismissed, waited 25 days before they notified that we're not going to honor the July 27th letter? Why did they put the dot, dot, dot in there? The only rationale, the only reasonable rationale, was to defraud, harass, and delay. None of the defendant's actions can be construed as genius. And the cost and delay – this case has gone on almost a year after the settlement, over $1,463.66. The cost in this appeal won't exceed that. The only explanation is to cause undue hardship and incur time and cost on the plaintiff. It just makes no sense. And we ask that the initial agreement, as outlined in July 27th, their terms, that they be required to honor those. And that due to their actions, that reasonable attorneys fees and costs and if possible, interest for the plaintiff be approved in this matter. Thank you. Thank you, Mr. Adebayor. You'll have the opportunity to rebut Mr. Vito. May it please the court, counsel. In response to Mr. Atberry's argument as to the only reason this whole case is here is because of delay, frivolity, deceit. The response to that is simple. The reason this is here is because two attorneys misunderstood the Common Fund document and made an agreement that was outside the scope of the original agreement and outside the bounds of what was authorized by their principles, both the plaintiff and American family. What had happened in this case and what's clear from the record on appeal is that when the settlement was resolved, at some point, Mr. Atberry called Mr. Biorce and said, you know, I'm entitled to one-third of the MedPay lien even though it's waived under the Common Fund document. That was a mistaken understanding of the Common Fund document. Mr. Biorce mistakenly agreed that that was a correct application of the Common Fund document and replied and said, sure, you're entitled to that one-third payment. The problem with the case and the problem with the appeal is that the plaintiff in this case signed a release that does not include that term. American family, who is a party in the release, who is a releasee, never agreed to that term. It is nowhere in this release, and that is why the trial court upheld the release and upheld the settlement rightfully. The whole issue of the one-third payment of the Common Fund is clear that it's not for the benefit of the plaintiff. Mr. Atberry says that that's a mistaken argument, but he says that with no proof in the record. The proof in the record that it's not a mistaken argument, that that was for the benefit of Mr. Atberry, is clear in the record. The record indicates that Mr. Biorce sent a letter to Mr. Atberry on July 27, 2011, in C-152 in the record, asking Mr. Atberry, I assume you want one-third of the payload, which I figure to be $1,463.66, made payable to you and not you and your client. But isn't it always to the benefit of the client because they're obligated to pay the percentage fee? It would be, and that would be a correct argument, but if that were the case and Mr. Atberry wasn't going to take that fee for himself, he would have had a long-sum payment like the rest of the payment that was made. The $3,500 was to be made to Mr. Atberry and the client. Why would the one-third medical payment lien payment be only made to Mr. Atberry? Because it's only for Mr. Atberry's benefit. And the Common Fund Doctrine complies with that. If you read the Stevens case, which I cited, the Common Fund Doctrine is for the attorney's fees. It's not for the client. The client is supposed to reimburse the insurer, the subrigore. And the payment, the one-third payment, is not to benefit the client. The client's already been benefited. The insurer has paid on their behalf. The one-third is to make sure the attorney has equity done and is given one-third of the payment because they have gone out and recouped money for the insurer. And in this case, if you read the Stevens case, it's in quoting the Ritter case, which is, I didn't cite the Ritter case, but it's cited in the Stevens case, which I did cite. It says, the Common Fund Doctrine allows an attorney who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. It further goes on to say, to sustain a claim under the Common Fund Doctrine, the attorney must show. In normal case law, it's always the plaintiff must show, the party must show, the movement must show. When the court is talking about the Common Fund Doctrine, it's the attorney must show because the Common Fund payment goes to the attorney. The problem with all of this is that Mr. Affary was never entitled to any Common Fund payment because the lien was waived. And the American family never received a benefit. In order for the Common Fund Doctrine to apply, there must be a fund that was created as a result of legal services performed by the attorney. The subrogee or claimant must not have participated in the creation of the fund, and the subrogee or claimant must have benefited from the fund. The American family didn't benefit from anything Mr. Affary did. In fact, it was punished. I get punished is the wrong term. But it suffered damage from what Mr. Affary did. If he never brought the lawsuit, American family would have only been out $4,300 in medical payments. Now he brings a lawsuit against another American family insurer, and they're out $4,300 plus the $3,500 they had to pay back. They wouldn't have been out that money had he not done what he did. And so equity doesn't require American family to give him a third of the money that he basically increased their – I'm sorry, I'm mincing my word. He basically increased their overall exposure, their overall amount necessary to be paid on this claim, and therefore equity doesn't entitle him to one-third of that payment. The representation made by the attorney for the defendant, when we settled this case, I had no idea this would happen, and they just told me this yesterday. I agree that wasn't the deal, but I'm not sure I can agree to reinstate. Does that mean nothing? No, it means the deal was between Mr. Affary and Mr. Biorsa. Mr. Affary may very well have a separate case against American family for the representations that Mr. Biorsa would make, but what's before the court – Isn't the principal bound by the agent? The principal may be bound by the agent in this case, but the problem with that argument is we're talking about two different issues. The agreement for the one-third is made between Mr. Affary and Mr. Biorsa. Mr. Affary's problem is with American family. What he's asking for the court to do today is to nullify – Who did Mr. Biorsa – who was he representing? He was representing Ms. Hackney, the defendant. But what Mr. Affary is asking the court to do today is to vacate the settlement between Ms. Mosley and Ms. Hackney, which is the settlement Ms. Mosley agreed to. What he's worried about is he didn't get his payment for the one-third of the medical payments, which is ancillary to the actual settlement that he's wishing to dissolve and the case that he's wishing to reinstate. So if you look at the Stevens case, the Stevens case is against an insurance company. He can take that case, and I think it's a loser, but he can take that case and he can sue American family, and American family can come in and defend on a $1,400 case and make the same arguments I'm making now. You're not entitled to that. And he can say, well, Mr. Biorsa promised me that, and the court can determine whether or not an oral contract was made and whether or not they're entitled to that payment. But to vacate this settlement and to reinstate the case is not the proper course. And it's not the proper course to tie it back into the parole evidence rule. The parole evidence rule, in the case that was cited, Norman Trust, the parole evidence rule is only allowed to determine the terms of the contract if the parole evidence establishes the condition precedence on the contract party's acceptance of the contract. They can't possibly be figured that there was a condition precedence that Mr. Atbury get $1,400 for Ms. Mosley to sign the paper. Ms. Mosley is in no way affected in any way whether Mr. Atbury gets $1,400 extra or not. Therefore, to say that somehow she had a condition precedence, she would not have signed that contract, but for Mr. Atbury getting $1,400 seems like a specious argument. No, wait. Wouldn't she have been obligated for his paternity? She would have been, but that comes out of the one-third of her payment. The medical payment lien is a separate fee that he, that Mr. Atbury gets to keep because he created the, if it was applicable, created the fund and benefited the insurer by getting back and recouping some of their money. It's two separate animals we're dealing with here. And so to keep the settlement and to keep the case is separate from whether or not he's entitled to recover under a normal contract under a dual misunderstanding of the common fund doctrine. That's a totally separate issue. The relief that's asked from the court today is to vacate the settlement and to reinstate the case. It's clear from the record that Ms. Mosley's position, despite what Mr. Atbury said, Ms. Mosley's position is no different if the case is reinstated or not. The two checks, if the money was really to be lumped together for the benefit of Mr. Atbury and his client, there would be no need for two separate checks. Why? Why go through that formality? Obviously, it's circumstantial, but it's the only thing before it, other than Mr. Atbury's testimony here today, and I know you're not a new evidentiary considering Bob. The only evidence before the court circumstantially is that this was not supposed to be a lump sum, that this was one for Mr. Atbury, two for Mr. Atbury and his client. And that was going to be divided up that way. As a final point, Mr. Atbury makes, in his reply brief, a request for fees and costs related to bringing this appeal in terms of research and writing and everything else. He cites no statute for any fees. He cites no common law basis for any fees. And I've never heard, quite honestly, I'm not a seasoned appellate attorney, but I've never heard of anyone being awarded under any type of law for the fees incurred for researching and writing an appellate brief. And I think that part of the argument should be dismissed. In some justices, this case all stems around two attorneys mistaking and misinterpreting the common fund doctrine. If that didn't happen, we wouldn't be here. If Mr. Atbury looked at the release and said, you know what, there's two numbers in that release that are enumerated. The third number is not enumerated. It's not even mentioned. Maybe I should put it in there. We wouldn't be here. What's there is other good and valuable consideration. I did argue that that's the perfluous language. It's language that's brought in there for legal ease. It seems a little bit overstretched to say that it's anything more than that. When right before it, there's $3,500. Right after that, there's $4,391 in the MedPay lien waiver, enumerated, numbered, spelled out in both numbers and words. And now we have $1,400 that's completely absent and just given other good and valuable consideration. I guess I disagree with your representation that it's superfluous. I think it may be more accurate would be that it's a catch-all phrase and whether or not it's adequate to catch it all. I don't know if I agree with that. I don't even know what it is. I didn't draft the release. Well, it's almost in every agreement. Well, right. And fortunately, law schools today are discouraging people from writing that, like the beginning of the release says, whereas. That's why I call it a catch-all phrase. Yes. I don't know what whereas means, Judge. I don't use whereas in my normal, everyday language. Isn't that language mainly found in deeds? Whereas? Indeed. No. Oh. And good and other valuable consideration. I couldn't honestly answer according to where it's normally found. But in this case, if you have three separate issues that are supposed to be three separate things that are the cornerstone of this agreement, and you have the plaintiff and the plaintiff's attorney looking at it, and one of those three separate issues that has a numeric value, that has import in the case, is not there, something should be said about it. And nothing was. And we're supposed to think that other good and valuable considerations is a catch-all. Well, maybe Mr. Bjorks has promised to McAdillac that the American family didn't know about. I mean, would they be entitled to… I guess that's my point. Is it adequate to cover what he's claiming? No. No, it's absolutely not. That's your position. That's the position, and I think it's the only valid position. There's two other numbers there that are broken down, and there's no accounting for this third $1,400 number that should have been included in the release, and it wasn't. And you can't look to parole evidence to do it because it wasn't a condition preceded for Ms. Mosley to sign the release. She's not getting any benefit from that $1,400, and that's clear from the two checks that were going to be issued. It's as clear as day. And the settlement needs to be – should be – should not be overturned, should not be dismissed, should not be dissolved, and the case should not be reinstated. This case should be over. It should be settled, and it should be done. The terms of the release are clear. American family is willing and able to pay them, and I believe that the case should be dissolved. Mr. Atberry later thinks he has a different case against American family for the work he did to recover under the Common Fund Doctrine. He's certainly entitled to bring that case, and the statute hasn't passed or told for him to do that. Thank you. Thank you, Mr. Vito. Mr. Atberry. Thank you. Your Honors, that agreement – or that term was a condition of precedent. In the end, my client wants to know how much is going to be in her pocket. In order for us to get there, I need to know what the global amount is, where my fees are going to be coming from, and by using the agent, Mr. Bristol, who says July 27th settlement terms, I utilize that – detrimentally relied upon that in order to tell my client this is how much is going to go in your pocket. Now, under their theory, if this is not allowed, my client will get a substantial less amount of money in her pocket because I will take – all my fees are coming out of just that amount. Now, he's saying that I had a duty to make sure that that term was in there. Well, I think they have a duty as a drafter to know what the terms of the agreement are and to do that, and if they're going to change the terms, notify me. And also, when they do draft a legal document, they need to know what the words that they are drafting, what effect they could have. How can that term be – to say that we put the words other and good value consideration in on a document just to make it sound pretty is – or legalese is not something that the court should entertain because that – to anybody, that – those language can be construed if you put it in context with the actual settlement to mean not just pretty language but that third term. Next, the defendant argues it was a mutual mistake. Well, that's what we argued to get this case reinstated. The agreement should have been voided because it's a mutual mistake. And I provide case law when I cite it in the trial court that a mutual mistake is grounds to rescind a contract.  They're also arguing that this resource was not given the authority. I – it's always bugging me as well that the defense attorney represents the person who hit somebody but then due to contractual obligations is required to then answer to the insurance companies and follow the insurance company's directions. But here, there was nothing in the record that I can see, and maybe I'm missing it, that they argued that this was a miscommunication. I do wonder what their motivation was to change the agreement, not tell the plaintiff, and wait 25 days, wait until everything's entered before they decide to tell. I do wonder about the motivation for that. In the end, I think we have a right to rely upon what their – what they outlined their agreement is. I have the right, when trying to settle a case, to contact the doctors and all the lien waivers, people with liens, and say, hey, let's negotiate this out. Let's create our terms to negotiate this out. Dr. So-and-so, there's a $10,000 lien. Will you take $1,000 or will you waive your lien? And I have the right to do that and then present that and utilize that on this. Now, maybe it's when Scott DeSouza, which was hired by American Family, ends up saying I'm going to – we're going to waive this. Well, the defendant has no right to waive that. If they're trying to argue now that he's only the defendant's attorney, he had no right to waive that. What that is implying to me is that he's talked to the subrogation part of the case, and as a take one for the team, let's go ahead and resolve this case. It helps American Family because it closes this case, gets the reserve off, and it closes us. That portion, your duty with the plaintiff, will now be resolved by agreement, and just so the American Family is resolved here, we will give them one-third of the attorney's fees. It's just like if I called a doctor's office and said, hey, you have a $10,000 bill. Will you take $1,000 and sign and release a waiver? There is nothing different in the negotiation process other than they're now trying to argue that in the common fund doctrine, just because the same carrier carries both, it doesn't apply. And I think that's a very important decision for the court to make, whether or not the common fund doctrine does apply when it's the same company, and I don't see how that can make a difference. And I think that is something for precedential value, but thank you. Thank you, Mr. Ashton. Ms. Beto will take mail in the background.